PER CURIAM.
The appellant in this direct criminal appeal challenges his conviction and sentence for aggravated battery on a pregnant victim. He raises several arguments, only one of which merits discussion. He contends that the trial court abused its discretion by allowing the victim to testify on redirect examination by the prosecution that she was afraid of the appellant because he told her “he had murdered someone and he got off on a murder trial.” Concluding that the trial court acted within its broad discretion in allowing this testimony, we affirm the appellant’s conviction and sentence.
Prior to trial, the prosecutor informed the trial court that the victim stated to him that she was afraid of the appellant because the appellant told her that he had killed a person and gotten away with it. The prosecutor properly informed the victim that she could not say this during the trial, but the prosecutor argued to the trial court that if the appellant pushed the victim during cross-examination as to why she was afraid of the appellant, the testimony should be allowed. The trial court indicated that the testimony might be allowed with a limiting instruction.
During the state’s direct examination, the victim testified that the appellant punched her in her stomach several times and hit her on the head with a pot of warm grease. But when a neighbor called the police, the victim refused to give the police her correct name or assist in locating the appellant. The victim testified that she did not initially cooperate with the police because she did not want to be called a snitch, because there was an outstanding warrant for her arrest, and because she was afraid of the appellant. On cross-examination, the following exchange occurred between defense counsel and the witness:
Q. In fact, that’s why you also gave a false name to law enforcement?
A. Right.
Q. It actually had nothing to do with the fact that you were scared of Mr. Crumbie, correct?
A. No, it had something to do with the fact that I was scared of Mr. Crum-bie.
Q. So instead of telling the police your real name so they could protect you or offer you some sort of assistance, you gave them a false name? And you want us to still believe that you were scared of Mr. Crumbie at that point?
A. I gave them a false name because I had a warrant but I still got protection from the police. They still came out. They still did a report. They still did what they were supposed to do to take care of that.
Q. Mr. Crumbie wasn’t arrested that night.
A. He wasn’t arrested because he left the house.
Q. Now, didn’t he also move back in with you after this occurred?
A. Right.
Q. And you still want us to believe you were scared of him?
A. I was afraid of him but I also loved him at the same time.
*895 [[Image here]]
Q. Now, the night that this happened, you said you went back inside your house?
A. Right.
Q. But Mr. Crumbie had left?
A. He hadn’t left yet.
Q. He hadn’t left?
A. No.
Q. So, again, you want us to believe that you were scared of Mr. Crumbie but you went back into a house where he was located?
A. That’s my house and I made him leave my house. You’re right, I went back inside my house.
Over defense counsel’s objection that the testimony was unfairly prejudicial, the trial court allowed the victim to testify on redirect about the appellant’s alleged statement to her, but the court instructed the jury that the testimony was admissible for the limited purpose of establishing its effect on the victim.
A trial court’s ruling on the admissibility of evidence is reviewed for an abuse of discretion. See Frances v. State, 970 So.2d 806 (Fla.2007). A trial court abuses its discretion only when no reasonable person would take the view adopted by the trial court. Id. at 813. Relevant evidence which would otherwise be considered inadmissible may be permitted when the defendant has “opened the door” to that evidence. See, e.g., Overton v. State, 801 So.2d 877 (Fla.2001). “As an eviden-tiary principle, the concept of ‘opening the door’ allows the admission of otherwise inadmissible testimony to ‘qualify, explain, or limit’ testimony or evidence previously admitted.” Ramirez v. State, 739 So.2d 568, 579 (Fla.1999) (quoting Tompkins v. State, 502 So.2d 415, 419 (Fla.1986)).
In this case, the appellant opened the door to the testimony concerning his alleged previous statement to the victim by repeatedly challenging the victim’s assertion made during direct examination that she initially refused to cooperate with the investigation in part because she was afraid of the appellant. The appellant proceeded with these challenges despite having been warned by the trial court that such a tactic might result in the admission of the victim’s account of the appellant’s previous statement. Had the trial court precluded this testimony, the jury would have been required to assess the victim’s credibility with an incomplete account of relevant evidence relating to her credibility. In these circumstances, the trial court did not abuse its discretion in allowing the state to present the challenged testimony on redirect examination. See, e.g., Love v. State, 971 So.2d 280, 286 (Fla. 4th DCA 2008) (recognizing that the opening the door concept is based on considerations of fairness and the truth seeking function of a trial and may be employed when redirect examination serves to reveal the whole story of a transaction only partly explained in cross examination); see also Williamson v. State, 681 So.2d 688 (Fla.1996) (holding that section 90.403, Florida Statutes, did not preclude testimony that a critical state witness knew that the defendant had previously murdered a child, when the credibility of the witness was at issue due to his failure initially to fully cooperate with law enforcement officers investigating the crime for which the defendant was on trial).
The appellant’s conviction and sentence are affirmed.
HAWKES, C.J., and ALLEN, J., concur; CLARK, J., dissents with opinion.