682 So.2d 1092 (1996)
STATE of Florida, Petitioner,
v.
Steven K. HOLIDAY, Respondent.
No. 87318.
Supreme Court of Florida.
November 14, 1996.
Robert A. Butterworth, Attorney General, and Richard L. Polin, Assistant Attorney General, Miami, for Petitioner.
Bennett H. Brummer, Public Defender, and Robert Kalter, Assistant Public Defender, Miami, for Respondent.
WELLS, Judge.
We have for review Holiday v. State, 665 So.2d 1089 (Fla. 3d DCA 1995), which expressly and directly conflicts with Valentine v. State, 616 So.2d 971 (Fla.1993), over the threshold burden a party challenging the opponent's use of a peremptory challenge *1093 must meet before a trial court must hold an inquiry pursuant to State v. Neil, 457 So.2d 481 (Fla.1984), clarified, State v. Castillo, 486 So.2d 565 (Fla.1986). Pursuant to article V, section 3(b)(3), Florida Constitution, we have jurisdiction, and we quash the district court's decision and reinstate Holiday's convictions.
Steven K. Holiday was charged with armed burglary, third-degree grand theft, and grand theft of a firearm. During voir dire at the trial, Holiday sought to use a peremptory challenge to excuse a female juror, Margaret Urrutia. The State objected, and the following discussion ensued:
MR. SCALLY [defense counsel]: Your honor, we strike Ms. Urrutia[.]
THE COURT: Margaret Urrutia, right. I have no idea if that is how we pronounce it, but it is a good try.
Defense has utilized five peremptory challenges.
MR. GONZALEZ [prosecutor]: Your Honor, as far as Ms. Urrutia is concerned, I ask for a race and gender neutral reason.
THE COURT: What reason do we have? Sir?
The defense counsel then advanced his reasons for the peremptory challenge, which the trial court rejected as not being race- or gender-neutral. As a result, Ms. Urrutia sat on the jury, which convicted Holiday on all three counts.
On appeal, the Third District reversed. See Holiday v. State, 665 So.2d 1089 (Fla. 3d DCA 1995). The district court first tracked the development of peremptory challenge law and concluded that under the current law, in order to require a trial court to hold an inquiry, a party objecting to the opponent's use of a peremptory challenge must: (1) timely object; (2) demonstrate on the record that the challenged person is a member of a distinct racial group, cognizable class, or gender; and (3) place on the record facts which reasonably indicate that a peremptory challenge is being used impermissibly. Id. at 1090. Employing this standard, the district court found that the State's request for race and gender-neutral reasons for the strike were insufficient to require an inquiry under the third prong of the test and that it was reversible error to disallow the challenge because the reasons proffered were insufficient. Id. at 1091.
This decision is in conflict with Valentine v. State, 616 So.2d 971 (Fla.1993). In Valentine, we found that any doubt concerning whether the objecting party has met its initial burden must be resolved in that party's favor. Id. at 974 (quoting State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988)). Specifically, we stated:
The primary purpose for this rule deferring to the objector is practicalit is far less costly in terms of time and financial and judicial resources to conduct a brief inquiry and take curative action during voir dire than to foredoom a conviction to reversal on appeal. When the vast consequences of an erroneous rulingi.e., an entire new trialare balanced against the minor inconvenience of an inquiryi.e., a delay of several minutesSlappy's wisdom is clear. To give this rule effect and minimize the risk of reversal, we recently held in State v. Johans, 613 So.2d 1319 (Fla.1993), that once a party makes a timely objection and demonstrates on the record that the challenged persons are members of a distinct racial group, the trial court must conduct a routine inquiry.

Valentine, 616 So.2d at 974 (emphasis added).
Our recent decision in Melbourne v. State, 679 So.2d 759 (Fla.1996), in which we set forth guidelines to help courts in applying Florida's law on peremptory challenges, resolves this conflict. In Melbourne we stated:
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, *1094 given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
Id. at 764 (footnotes omitted).
Consequently, we quash the district court's decision, which is in conflict with these clarified guidelines. While the district court correctly found that the party objecting to the exercise of a peremptory challenge must make a timely objection and demonstrate that the challenged juror is a member of a distinct racial group, cognizable class, or gender, it erred when it found that the party must also show that the peremptory challenge is being used impermissibly before the trial court must ask the proponent of the strike for a permissible reason. Rather, the third prong of the test requires the objecting party only to request the trial court to ask the other side its reason for the strike. Applying this standard to the instant case, we find the trial court correctly conducted a Neil inquiry.
Additionally, we find that it was within the trial court's discretion to determine the propriety of the defense's reasons for the strike. As we further stated in Melbourne, the trial court's decision turns primarily on a determination of credibility and will not be overturned on appeal unless clearly erroneous. Melbourne at 764-65. Based on our review of the entire record of the voir dire concerning this juror, we find no such error.[1]
Accordingly, we quash the district court's decision and reinstate Holiday's convictions.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES and HARDING, JJ., concur.
ANSTEAD, J., concurs specially with an opinion, in which KOGAN, C.J., concurs.
*1095 ANSTEAD, Judge, specially concurring.
I concur in the majority opinion and write separately only to caution and emphasize that under Melbourne v. State, 679 So.2d 759 (Fla.1996), we have continued to impose an initial burden on the party objecting to the exercise of a peremptory challenge by the other side:
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
Id. at 764 (footnotes omitted). For example, the State here has cited our recent opinion in Windom v. State, 656 So.2d 432 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995), in its brief. In Windom we affirmed a capital conviction and death sentence and held that the defendant had failed to carry his initial burden in objecting to the State's use of a peremptory challenge to an East Indian woman. In Windom, we stated that Johans
requir[ed] a Neil inquiry when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner. However, a timely objection and a demonstration on the record that the challenged person is a member of a distinct racial group have consistently been held to be necessary.
Id. at 437. Specifically, we observed that defense counsel did not make a timely objection in which it was demonstrated on the record that the prospective juror was a member of a cognizable class. We concluded "that the defendant's expressed objection did not make it necessary for the trial court to require the State to have and express a race-neutral reason for the challenge." Id. Melbourne, of course, reaffirms and clarifies the nature and extent of this initial burden.
KOGAN, C.J., concurs.
NOTES
[1] The following exchange took place:

MR. HENDON: Your Honor, essentially, the reason that we struck juror Urrutia is, I just do not think she can be fair to my client. It has nothing to do with her race.
She was very forceful in her answering the questions. Even corrected how we mispronounced her name, and in consideration of the other panel members we have, I do not think blending with the other panel members she would be fair to my client.
THE COURT: A gender neutral or race neutral reason for striking the juror.
MR. HENDON: Your Honor, again, it has nothing to do with her gender or race. It is my gut feeling as defense attorney that this particular juror, who came across very forceful in her response to the questions, would be a juror more inclined to believe everything the state's witnesses are testifying to.
THE COURT: Based on the case law I don't think that's good enough.
MR. HENDON: Well, Your Honor, is the state claiming a specific objection to us exercising a peremptory? Are they saying it is based on her gender or her ethnicity or under what basis is the state challenging our right to exercise our peremptory challenge
MR. GONZALEZ: Both.
MR. HENDON:to this particular juror?
MR. GONZALEZ: Both, in response to the defense. State v. Reid, 507 So.2d. Unacceptable reasons for the exclusion of a juror. Feeling about a juror.
I think his other argument was to reach a juror on the panel and ability to mix in with those jurors. That under Allen v. State, 17 FLWD 622, that is a Third D.C.A.March of 1992 I believe that is also impermissible reason to exclude a juror.
MR. HENDON: Your, Honor, we have to get to the actual reason for peremptory challenges.
In this particular case we are intending to exercise a peremptory solely because she is a juror who we believe would not be the best juror for this client in this particular trial.
I have no idea what Ms. Urrutia's ethnicity is. Yes, she is a woman. I concede that. But my desire to strike her has nothing to do with her gender. It is based strictly on the presence that she displayed in my mind when answering the questions that were posed by the Court, the state and the defense.
MR. GONZALEZ: For the record, Your Honor, the defendant in this case is black and all the strikes the defense used has been on white members of the jury.
MR. HENDON: For the record, we have a limited number of non-white jurors. Would that we would have an equal number so this would never be a question. But just because we have exercised challenges on jurors who are not black has no bearing on the defense intents in this case.
The victim in this case is black as well.
THE COURT: I am leaving her on. I don't find any gender or race neutral reason for striking this juror. Nor have I noticed anything unusual in her mannerisms towards this defendant or towards anyone that would warrant her exclusion under the case law.
She is back on.