767 So.2d 525 (2000)
Guillermo FOSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3528.
District Court of Appeal of Florida, Fourth District.
July 19, 2000.
Rehearing Denied September 26, 2000.
*526 Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Assistant Public Defender, West Palm Beach, for appellant.
*527 Robert A. Butterworth, Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
EN BANC
FARMER, J.
Defendant was on trial for robbery. During jury selection two prospective jurors indicated that they were employed at manual labor positions, one with Amtrak, the other installing rain gutters. After an initial, tentative panel was assembled, defendant exercised peremptory challenges against the two men.
Later, after defendant had exercised four peremptory challenges, the prosecutor finally exercised the first such challenge. At that point, defendant requested a race-neutral reason for striking the prospective juror. The prosecutor voluntarily withdrew the strike. Immediately thereafter, however, the prosecutor said: "I would like to have a gender neutral reason [for the two men] by the defendant." After additional colloquy with the court as to the timeliness of raising the matter, defendant provided the following reason for the peremptory strikes:
"For both, non-gender reasons, the employment, both being manual laborers, both being hard workers, in my opinion and just that that type of guy that works hard with his hands everyday doesn't look too kindly to someone that doesn't want to work that hard with their hands to get what they need to have.
In my experience as a State Attorney, I found that guys who had blue collar jobs tend to convict people a lot more often."
Later defense counsel elaborated:
"Judge, it's our position that the crime charged, in essence, what it is is someone instead of working or earning or doing something, they're just taking something they want. They are taking money. These are two guys that work very hard for the money that they do get.
"Now we accepted Miss Jones, as a caretaker. Miss Rodriguez, is in sales. Going to the next row. The next gentleman, Mr. Darcangelo, is a student. Miss Cordeau used to be an office manager. And I'm not down playing any of that.
"But having personally lived with someone who has a blue collar job and seeing what they look like when they come home at 4:00 o'clock in the afternoon after going to work at 5:00 o'clock in the morning, and considering what a mechanic and gutter installer do through the course of the day, it's been my experience that this crime will be more emotionally trying on them. More outrageous conduct. And it will be more difficult, if not impossible, for Mr. Foster to get a fair trial with them bringing that in. And there is no way they can't bring it in because it's their lifestyle and occupation. And it goes into the jury room."
The trial judge found that the reason was not facially invidious but that it was not genuine. Defendant appeals the ruling barring his strikes of these two jurors.
Since Abshire v. State, 642 So.2d 542 (Fla.1994), the rationale of State v. Neil, 457 So.2d 481 (Fla.1984), and State v. Slappy, 522 So.2d 18 (Fla.1988), has been applied to peremptory challenges exercised on the basis of sex. The procedure for objections to peremptory challenges based on invidious reasons is now fixed by Melbourne v. State, 679 So.2d 759 (Fla. 1996). The process begins with a party:
"a) make[ing] a timely objection on that basis, b) show[ing] that the venireperson is a member of a distinct racial group, and c) request[ing] that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike." *528 Melbourne, 679 So.2d at 764; see also State v. Johans, 613 So.2d 1319 (Fla.1993). In a footnote, Justice Shaw added as regards the sufficiency of the triggering objection: "A simple objection and allegation of racial discrimination is sufficient, e.g., `I object. The strike is racially motivated.'" Melbourne, 679 So.2d at 764 & n. 2.
Before Melbourne was decided, however, this court had unequivocally held that a mere request by a party adverse to the challenge asking for a neutral reason is categorically not a sufficient objection. In Rivera v. State, 670 So.2d 1163 (Fla. 4th DCA 1996), we reversed a conviction because, among other reasons, the prosecutor's request for a reason for a challenge did not constitute an objection sufficient to engender an inquiry. We said:
"Here the prosecutor did not state an objection that the peremptory challenge was being used in a gender-based discriminatory manner. Rather, he simply stated: `Your Honor, we would ask for a gender-neutral reason.' The prosecution's statement did not constitute either an objection or a threshold showing which would trigger the Neil inquiry envisioned by Johans."

670 So.2d at 1165.
In Melbourne the statement beginning the process was: "I would raise a Baxter [sic-Batson?] Johans challenge, J-O-H-A-N-S. He's a black man...." The court commented regarding this assertion that: "Giving these words their plain meaning, defense counsel seemed to be voicing a general objection on racial grounds to the State's strike." 679 So.2d at 765. In fact, Justice Shaw went on to observe that opposing counsel made no further objection to the strike, noting specifically that "[a]t no time did defense counsel request that the court ask the State its reason for the strike." 679 So.2d at 765.
Of course, in our case today, as well as in Rivera, it is clear that the prosecution did in fact ask for a gender neutral reason. As a matter of fact, the objection in our case today is similar to the one in Melbourne. Rivera was decided before Melbourne was released. Accordingly, we did not then have its treatment of the matter of the sufficiency of the challenge at hand when we determined that a request for a non-invidious reason was insufficient to be deemed an objection triggering the kind of inquiry now provided by Melbourne.
Under these circumstances we think that the prosecutor's request, "I would like to have a gender neutral reason for [the two men] by the defendant," cannot possibly have been understood as anything other than an objection to the strikes on gender grounds.[1] While it is true that the prosecutor did not also incant the words, "I object," in addition to requesting the gender neutral reason, there can have been no possible basis for requesting a reason for a peremptory challenge unless it was being objected to on one of the category bases now recognized by Neil-Slappy and Abshire.
In short, in context it was quite recognizable as an objection to striking these two men because of their sex. This is amply demonstrated by the clear showing in this record that all of the people involved in this process, judge, prosecutor, defense counsel, had no difficulty in proceeding as though the words "I object" had also been voiced. We therefore recede from that part of Rivera holding that the form of the objection was facially insufficient to trigger an inquiry under Abshire-Melbourne as to whether a peremptory challenge was being improperly exercised.
*529 Turning next to the court's holding that the reasons given by defense counsel were not genuine, we follow our recent precedent in Young v. State, 744 So.2d 1077 (Fla. 4th DCA 1999). There we held:
"A trial court must analyze a subjective issuewhether a proffered explanation for a challenge is a pretext, which means that it conceals an intent to discriminate based on race. As the supreme court recognized, identifying the true nature of an attorney's motive behind a peremptory strike turns primarily on an assessment of the attorney's credibility. In our legal system, credibility is a matter solely within the purview of a finder of fact. For this reason, a trial judge's ruling on the `genuineness' of a peremptory challenge `will be affirmed on appeal unless clearly erroneous.'" [c.o.]
744 So.2d at 1082; see also Melbourne, 679 So.2d at 764-65. As Judge Gross further explained in Young:
"Since Melbourne, both the supreme court and this court have acknowledged and upheld the trial court's broad discretion in ruling on the exercise of peremptory challenges. See Franqui v. State, 699 So.2d 1332 (Fla.1997), cert. denied, 523 U.S. 1040, 118 S.Ct. 1337, 140 L.Ed.2d 499 and 523 U.S. 1097, 118 S.Ct. 1582, 140 L.Ed.2d 797 (1998); State v. Holiday, 682 So.2d 1092 (Fla. 1996); King v. Byrd, 716 So.2d 831 (Fla. 4th DCA 1998); Anderson v. State, 711 So.2d 230 (Fla. 4th DCA 1998); Harrison v. Emanuel, 694 So.2d 759 (Fla. 4th DCA 1997); Nelson v. State, 688 So.2d 971 (Fla. 4th DCA 1997). Where we have reversed a trial court's decision, the trial court's assessment of credibility was severely compromised by an inaccurate recollection of the questioning during voir dire."
744 So.2d at 1082-1083.
It is apparent to us that the trial court's finding that the reason for the strikes was not genuine turned largely on a credibility determination. We are simply unable to discern on this record any basis to say that he abused his discretion.
AFFIRMED.
WARNER, C.J., DELL, GUNTHER, STONE, POLEN, KLEIN, STEVENSON, SHAHOOD, GROSS, TAYLOR and HAZOURI, JJ., concur.
NOTES
[1] We reject appellant's argument that the objection came too late because it was not made at the moment of the actual strike. The objection was made before jury selection closed, before either party had finally accepted the jury as constituted, and thus also before it was sworn. As long as backstrikes are allowed, the time of the objection here is enough to preserve the issue.